IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SYLVIA GEAR, MALEKEH K. HAKAMI, )
PATRICIA GINTER, CLAIRE WHELAN, )
WISCONSIN ALLIANCE FOR RETIRED )
AMERICANS, LEAGUE OF WOMEN )
VOTERS OF WISCONSIN, )
 )
       Plaintiffs, )
 )    No. 20-CV-278
    v. )
 )
DEAN KNUDSON, JULIE M. GLANCEY, )
ROBERT F. SPINDELL, JR., MARK L. )
THOMSEN, ANN S. JACOBS, MARGE )
BOSTELMANN, in their official capacity )
as members of the Wisconsin Election )
Commission, MEAGAN WOLFE, in her )
official capacity as the Administrator of the )
Wisconsin Elections Commission, )
 )
       Defendants. )
_____)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Sylvia Gear, Dr. Malekeh K. Hakami, Patricia Ginter, Claire Whelan, Wisconsin

Alliance for Retired Americans, and League of Women Voters of Wisconsin ("LWVWI")

(collectively, "Plaintiffs") seek declaratory and injunctive relief as follows:

**NATURE OF ACTION**

1.    The COVID-19 pandemic presents an unprecedented challenge to our nation,

threatening millions of Americans' lives and livelihoods and severely straining health care

systems, the economy, and all levels and branches of government.  It is wreaking havoc across all

sectors and causing massive disruptions in election administration during this presidential election

year.  COVID-19's high transmission rate poses a severe risk to in-person voters, particularly those

in at-risk groups, and has already resulted in massive withdrawals by volunteer poll workers who

justifiably fear contracting the disease.  A number of states' officials have already felt compelled to postpone primary and other elections in the face of this rapidly escalating public health emergency.

2.      In order to reduce the transmission of COVID-19, on Tuesday March 24, 2020, Governor Tony Evers issued Emergency Order #12, the "Safer at Home" Order, closing all nonessential businesses in Wisconsin and ordering the state's residents to stay at home, with limited exceptions for essential businesses, occupations, and governmental functions.[1]  Governor Evers cautioned the public against making "unnecessary trips" and is requiring that travel be limited to "essential needs like going to the doctor, grabbing groceries, or getting medication."[2]

3.      The Order commands that, "All public and private gatherings of any number of people that are not part of a single household or living unit are prohibited, except for the limited purposes expressly permitted in this Order."[3]  It also requires that, "Elderly people and those who are vulnerable as a result of underlying health conditions should take additional precautions. People at high risk of severe illness from COVID-19 and people who are sick are urged to stay in their home or residence to the extent possible except as necessary to seek medical care."[4]  The Order may be enforced by local law enforcement, and "[v]iolation or obstruction . . . is punishable by up to 30 days imprisonment, or up to $250 fine, or both. Wis. Stat. § 252.25."[5]

---

[1]     Emergency Order #12, Safer at Home Order, at 2, *available at* https://evers.wi.gov/Documents/COVID19/EMO12-SaferAtHome.pdf.
[2]     Gov. Tony Evers (@GovEvers), TWITTER (Mar. 23, 2020, 10:34 AM), https://twitter.com/GovEvers/status/1242097501575901187.
[3] *See supra* note 1, Emergency Order #12, at 3.
[4] *Id*. at 4.  "Currently at least 14 states and 22 municipalities have ordered 152,485,515 people or 46% of the U.S. population to stay home as a result of the pandemic, according to data compiled by @CNN using U.S. Census population estimates."
[5] *See supra* note 1, Emergency Order #12, at 16.

4.     The pandemic shows no sign of abating before Wisconsin's April 7, 2020 statewide elections, and the emergency order issued by Governor Evers' administration took effect on March 25, 2020 at 8:00 a.m. and will remain in effect until April 24, 2020 at 8:00 a.m.  Additionally, countless eligible Wisconsin voters have been self-quarantining and will continue to self-quarantine for fear of contracting COVID-19, and/or for fear of transmitting the disease, whether they are symptomatic or not.

5.     Election codes in Wisconsin and other states never contemplated such a crisis. Given the rapidly spreading infection, many states' election laws now force voters to choose between exposing themselves to a severe risk to their health and exercising their constitutionally-protected right to vote.  This could not have been anticipated or intended by legislators.  State laws, including state constitutions, also constrain public officials' ability to modify voting procedures to ensure that eligible voters, particularly voters at heightened risk of contracting and dying from COVID-19, can continue to participate in our democracy even during a national public health emergency.

6.     In light of the pandemic, many Wisconsin voters are abandoning plans to vote in person for the April 7, 2020 statewide elections – which include a Wisconsin Supreme Court race, the Democratic primary for the presidential election, and thousands of elections for county and municipal offices throughout the state – and are requesting absentee, mail-in ballots in unprecedented numbers.  As of the morning of March 25, 2020, 626,837 absentee, mail-in ballots have been requested, and 595,195 have been sent.[6]

---

[6] Wisconsin Elections Commission, Absentee Ballot Report - April 7, 2020 Spring Election and Presidential Preference Primary,  https://elections.wi.gov/node/6775/ (last visited Mar. 25, 2020).

7.      By Wisconsin law, these absentee, mail-in ballots must be signed by the voter and also signed by a witness who is an adult U.S. citizen.  Wis. Stat. § 6.87(4)(b)(1).  This requirement poses a significant barrier to absentee, mail-in voting for any self-quarantining eligible voter who lives alone or who does not have an adult U.S. citizen in their household.  Indeed, for these voters, it will be simply impossible to satisfy the witness signature requirement to cast an absentee, mail-in ballot, and that voter will be denied their right to vote—caught in an unconstitutionally burdensome and unnecessary choice between their life and their liberty.  There are over 675,000 single-member households in Wisconsin, and many other households that include only one adult.[7] More than 250,000 of these single-member households are individuals over the age of 65.[8]

8.      Since in-person voting would pose a severe risk to the bodily integrity and lives of these individuals, that option is no option at all.  Taken together, the risks inherent in in-person voting and in securing a witness signature for an absentee mail-in ballot preventing certain eligible Wisconsin voters who live alone or without an adult U.S. citizen in the household from casting a vote.  Enforcing this statutory requirement constitutes an undue burden on the right to vote not justified by any legitimate or important government interest of the First and Fourteenth Amendments to the U.S. Constitution.

9.      Plaintiff Patricia Ginter has received a mail-in absentee ballot in the mail; Dr. Malekeh Hakami and Claire Whelan have requested mail-in absentee ballots; Plaintiff Sylvia Gear intends to request a mail-in absentee ballot this week.  Because they all live alone and are all self-quarantining during the COVID-19 pandemic, given their advanced age and medical histories, the CDC's recommendations, and now Governor Evers's Emergency Order #12, Plaintiffs have no

---

[7] *See* U.S. Census Bureau, *2013-2017 American Community Survey 5-Year Estimates*, Table 2501, Occupancy Characteristics.
[8] *Id.*

4

way to safely obtain a witness signature on their mail-in absentee ballots certifications.  Absent a court order enjoining the witness signature requirement for the duration of the COVID-19 pandemic, and certainly no less than the duration of Governor Evers's Emergency Order #12 (currently in effect through April 24, 2020, subject to any further extension), they will be denied their right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the United States Constitution and seeks equitable and other relief for the deprivation of constitutional rights under color of state law.

11.     This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

12.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     This Court has personal jurisdiction over Defendant-Commissioners Dean Knudson, Julie M. Glancey, Mark L. Thomsen, Ann S. Jacobs, Marge Bostelmann, and Robert F. Spindell, Jr., the members of the Commission, and Meagan Wolfe, the Administrator of the Commission, who are sued in their official capacities.  Defendants Knudson, Glancey, Thomsen, Jacobs, Bostelmann, Spindell, Jr. and Wolfe are state officials who reside in Wisconsin and work in Madison, Wisconsin.

14.     Venue is appropriate in the Western District of Wisconsin, under 28 U.S.C. § 1391(b)(1), because Defendants are state officials working in Madison, Wisconsin.  A substantial part of the events giving rise to these claims occurred and continues to occur in this district, making venue also proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

15.     Plaintiff Sylvia Gear is an 83-year-old retired teacher who lives alone at her residence in Cudahy, Wisconsin.  She is a United States citizen, has never lost her right to vote by reason of a felony conviction or a court order, and is a registered Wisconsin voter.  Ms. Gear is a member of Plaintiff Wisconsin Alliance for Retired Americans.  Ms. Gear is at risk of severe complications from the novel coronavirus and COVID-19 because of her age and her medical history as a cancer survivor.  For this reason, she is self-quarantining at her home, and she has not allowed anyone in her house for approximately two weeks.  There have been only two exceptions over the last two weeks: (1) she went to a Pick 'n Save once last week to obtain necessary pain medication that could only be obtained in person, and (2) she went to the bank to deposit a check.  While she was at the store, she picked up a few groceries, wearing gloves for protection.  Otherwise, she has not been anywhere else except her house in approximately two weeks.  Ms. Gear has also recently had shots for pain from three fractured vertebrae, which make it quite painful and difficult to walk at present.  Because of the COVID-19 pandemic, a scheduled shot for the pain management was canceled and is being rescheduled to a future date.  Ms. Gear usually goes to her sister's house for dinner on Monday, but she has not done that for two weeks.  One of her sisters cooked food for her this week and left it on her doorstep.  Otherwise, Ms. Gear has been able to subsist on the food she has in her home.  She has not been to any of her regular social activities in approximately three weeks, including attending Sisters of St. Francis in St. Francis, Wisconsin and gathering with her teacher friends at a weekly fish fry at a local restaurant.  She had to miss her granddaughter's and grandnephew's birthdays.  Because Ms. Gear is quarantining herself pursuant to government recommendations and now Emergency Order #12, and cutting off all in-person contact unless it is <u>absolutely</u> necessary, *e.g.* to obtain medication, she must vote by

mail-in absentee ballot to avoid the severe risks to her health and life posed by in-person voting. She intends to submit a mail-in absentee ballot request online at myvote.wi.gov this week.  Ms. Gear is aware that a witness signature is required to cast a mail-in absentee ballot.  However, because she lives alone and is self-quarantining, she has no way to obtain a witness's signature on her absentee ballot without seriously endangering herself.

16.     Plaintiff Dr. Malekeh K. Hakami is a 73-year-old clinical psychologist who lives alone at her residence in Pewaukee, Wisconsin.  She is a United States citizen, has never lost her right to vote by reason of a felony conviction or a court order, and is a registered Wisconsin voter. Dr. Hakami is at risk of severe complications from the novel coronavirus and COVID-19 because of her age and because she has a history of severe hay fever, for which she has needed shots in the past.  For these reasons, she has put herself under self-quarantine at her home.  Her daughter-in-law purchases her groceries for her and leaves them at Dr. Hakami's residence; Dr. Hakami does not open the door for her.  Dr. Hakami has not allowed anyone to enter her house in approximately two weeks pursuant to government recommendations and now Emergency Order #12, and she is cutting off all in-person contact.  Because Dr. Hakami is quarantining herself pursuant to government recommendations and now Emergency Order #12 and cutting off all in-person contact unless it is absolutely necessary, *e.g.* to obtain medication, she must vote by mail-in absentee ballot to avoid the severe risks to her health and life posed by in-person voting.  She has submitted an absentee, mail-in ballot request but has not yet received it in the mail.  Dr. Hakami is aware that a witness signature is required to cast a mail-in absentee ballot.  However, because she lives alone and is self-quarantining, she has no way to obtain a witness's signature on her absentee ballot without seriously endangering herself.

17.     Plaintiff Patricia Ginter is a 72-year-old realtor who lives alone at her residence in Wauwatosa, Wisconsin.  She is a United States citizen, has never lost her right to vote by reason of a felony conviction or a court order, and is a registered Wisconsin voter.  Ms. Ginter is at risk of severe complications from the novel coronavirus and COVID-19 because of her age and her medical history of hypertension.  For this reason, she has been self-quarantining at her home for approximately two weeks, and she has not allowed anyone in her house for a couple of weeks.  There has been only one exception over the last two weeks: she went to the grocery store once.  Other than what she bought at the grocery store, she has been subsisting on the food in her cupboard and her freezer.  Because Ms. Ginter is quarantining herself pursuant to government recommendations and now Emergency Order #12 and cutting off all in-person contact unless it is absolutely necessary, *e.g.* to obtain food, she must vote by mail-in absentee ballot to avoid the severe risks to her health and life posed by in-person voting.  She applied for and obtained a mail-in absentee ballot.  Ms. Ginter filled out the mail-in absentee ballot, making her choices, but then noticed the witness signature requirement in the instructions.  Because she lives alone and is self-quarantining, she has no way to obtain a witness's signature on her mail-in absentee ballot without seriously endangering herself.

18.     Plaintiff Claire Whelan is a 64-year-old retiree who lives alone at her residence in Appleton, Wisconsin.  She is a United States citizen, has never lost her right to vote by reason of a felony conviction or a court order, and is a registered Wisconsin voter.  Ms. Whelan is a member of the League of Women Voters of Wisconsin of Appleton and therefore a member of Plaintiff League of Women Voters of Wisconsin.  Ms. Whelan is at risk of severe complications from the novel coronavirus and COVID-19 because of her age and her preexisting condition of asthma.  To protect herself, she has been self-quarantining at her apartment for over a week.  Additionally, Ms.

8

Whelan wants to take every precaution to minimize the chance that she is exposed to COVID-19, because she wants to maximize the chance that she can once again visit her mother, who is 93 years old and lives in a nursing home nearby.  She fears bringing the virus into that facility, but also fears that her mother could rapidly decline, while the nursing home remains on lockdown.  She saw her mother two Fridays ago, just before the nursing home barred all visitors, family, and volunteers.  Since last Saturday when she went to a grocery store to buy provisions, Ms. Whelan has not been to any other businesses, not even a grocery store or pharmacy.  She was too scared to even fill up her car at a gas station; she did not want to take any chances.  Ms. Whelan has been able to subsist on the food in her home.  Because Ms. Whelan is quarantining herself pursuant to government recommendations and now Emergency Order #12 and cutting off all in-person contact unless it is <u>absolutely</u> necessary, *e.g.* to obtain more food or medication, she must vote by mail-in absentee ballot to avoid the severe risks to her health and life posed by in-person voting.  Ms. Whelan requested a mail-in absentee ballot online on March 20, 2020.  She is waiting until the end of the month, when she drops off her rent check late at night to avoid other people, to see if her ballot has arrived in her mailbox.  Ms. Whelan is aware that a witness signature is required to cast a mail-in absentee ballot.  However, because she lives alone and is self-quarantining, she has no way to obtain a witness's signature on her absentee ballot without seriously endangering herself.

19.    Plaintiff Wisconsin Alliance for Retired Americans ("Wisconsin Alliance") was founded on March 14, 2005.  Wisconsin Alliance has 103,611 members, composed of retirees from public and private sector unions, community organizations and individual activists. It is incorporated in the State of Wisconsin as a 501(c)(4) social welfare organization under the Internal Revenue Code.

20.     Alliance for Retired Americans is a national organization with more than 4.3 million members in all 50 states. The national Alliance charters state organizations, such as the Wisconsin Alliance, which then elect officers, form a governing board, affiliate local chapters and organize members in the state.

21.     Wisconsin Alliance's board is presided over by Marlene Ott, a retired member of the National Education Association ("NEA").  President Ott presides over a board with a treasurer, secretary and vice president representatives from the largest affiliates. During monthly meetings, they organize activities, initiate programs, and maintain the governance of Wisconsin Alliance in the state.

22.     Wisconsin Alliance participates in an organizing calendar that resembles and reflects the national Alliance for Retired Americans, with Wisconsin-specific additions. This calendar includes engaging local, state and federal representatives about issues and laws that affect retirees and seniors, highlighting May as Older Americans Month and celebrating the anniversaries of Social Security and Medicare.

23.     Wisconsin Alliance also engages in member education about elections. Historically, Wisconsin Alliance has provided information to members about how their elected leaders have voted on issues that impact the lives of seniors and provided information about how to cast a ballot.

24.     The interests Wisconsin Alliance seeks to protect in this action, the voting rights of its members and of all retired Wisconsinites, are germane to the organization's purpose as detailed above.  As a membership organization, Wisconsin Alliance suffers the constitutional injury of its members, like Plaintiff Sylvia Gear.

25.     Plaintiff League of Women Voters of Wisconsin ("LWVWI") is a nonpartisan, nonprofit, non-stock corporation organized under the laws of the State of Wisconsin with its principal office located at 612 West Main St., Suite 200, in the City of Madison, Dane County, Wisconsin.  LWVWI is an affiliate of The League of Women Voters of the United States, which has 750 state and local Leagues in all 50 states, the District of Columbia, Puerto Rico, the Virgin Islands, and Hong Kong.  LWVWI works to expand informed, active participation in state and local government, giving a voice to all Wisconsinites.

26.     LWVWI, a nonpartisan community-based organization, was formed in 1920, immediately after the enactment of the Nineteenth Amendment granting women's suffrage.  The LWVWI is dedicated to encouraging its members and the people of Wisconsin to exercise their right to vote as protected by the Constitution and the Voting Rights Act of 1965. The mission of LWVWI is to promote political responsibility through informed and active participation in government and to act on selected governmental issues. The League seeks to maximize eligible voter participation through its voter registration efforts and encourage civic engagement through registration and voting.

27.     The LWVWI impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process. Currently LWVWI has 20 local Leagues and approximately 2,200 members, including Plaintiffs Dr. Malekeh Hakami and Claire Whelan. LWVWI works with and through 20 local Leagues in the following cities, counties, and areas throughout Wisconsin: Appleton, Ashland/Bayfield Counties, Beloit, Dane County, Door County, the Greater Chippewa Valley, Greater Green Bay, Janesville, the La Crosse area, Manitowoc County, Milwaukee County, the

Northwoods, Ozaukee County, the Ripon area, Sheboygan County, the Stevens Point area, the Upper St. Croix Valley, the Whitewater area, Winnebago County, and the Wisconsin Rapids area.

28.     LWVWI began as an organization focused on the needs of women and training women voters. It has evolved into an organization concerned with educating, advocating for, and empowering all Wisconsinites. With members in nearly every county in the State, the LWVWI's local Leagues are engaged in numerous activities, including hosting public forums and open discussions on issues of importance to the community. Individual League members invest substantial time and effort in voter training and civic engagement activities, including voter registration and get-out-the-vote ("GOTV") efforts.   LWVWI has developed the statewide Election Observation Program and the Vote411 voter guide for Wisconsin.

29.     LWVWI also devotes substantial time and effort to ensuring that government at every level works as effectively and fairly as possible. This work involves continual attention to and advocacy concerning issues of transparency, a strong and diverse judiciary, fair and equal nonpartisan redistricting, and appropriate government oversight.

30.     The interests LWVWI seeks to protect in this action, the voting rights of its members and all eligible Wisconsin voters, are germane to the organization's purpose as detailed above.  As a membership organization, LWVWI suffers the constitutional injury of its members, like Plaintiff Claire Whelan.

31.     Defendants Dean Knudson, Julie M. Glancey, Mark L. Thomsen, Ann S. Jacobs, Marge Bostelmann, and Robert F. Spindell, Jr. are sued in their official capacities as the members of the Wisconsin Elections Commission.

32.     Defendant Meagan Wolfe is sued in her official capacity as the Administrator of the Wisconsin Elections Commission.

12

## BACKGROUND

33.     In December 2019, a novel strain of the coronavirus was detected, now named SARS-CoV-2, and the disease it causes became known as COVID-19; it has now spread throughout the world, including to every state in the United States.

34.     On January 30, 2020, the World Health Organization declared COVID-19 to be a Public Health Emergency of International Concern.  On March 11, 2020, the WHO declared that it had become a pandemic.

35.     The novel coronavirus that causes COVID-19 continues to spread at an unprecedented pace around the world and within the United States.  There are currently 68,534 confirmed cases in the United States, and there have been 990 deaths nationwide.[9]  As of the evening of March 25, 2020, authorities had confirmed 585 positive cases of coronavirus in Wisconsin, and seven people have died.  As of March 23, 2020, within 72 hours, positive COVID-19 cases rose in the United States from 15,219 to 33,404 (a 119% increase) and rose in Wisconsin from 206 to 416 (a 102% increase).[10]

36.     Epidemiologists and infectious disease specialists are still gaining visibility on the pandemic, but COVID-19 appears to be much more contagious than influenza, SARS, or MERS, and significantly more lethal than influenza.

37.     According to the Centers for Disease Control and Prevention ("CDC"), people who are 65 years old or older or who have underlying health conditions and diseases, such as chronic lung diseases, asthma, serious heart conditions, and others that suppress immune systems like

---

[9] Mitch Smith et al, *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Mar. 26, 2020).
[10] *See supra* note 1, Emergency Order #12, at 1.

HIV/AIDS, are at higher risk of complications from COVID-19.[11]  The CDC's website, relying upon research from the National Center for Immunization and Respiratory Diseases (NCIRD), Division of Viral Diseases, notes that immunocompromised individuals are at severe risk from COVID-19: "Many conditions can cause a person to be immunocompromised, including cancer treatment, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications."[12]  Severe COVID-19 cases can lead to pneumonia and acute respiratory distress syndrome, requiring hospitalization; in critical cases, some patients need to be intubated and put on a ventilator. Younger people have also contracted severe cases of COVID-19 and been hospitalized; some have died.  Significantly, even if a person ultimately recovers from COVID-19, it can leave their lungs severely damaged and weakened.

38.     The CDC has noted that asymptomatic COVID-19-positive individuals can transmit the disease to others.[13]  Studies have confirmed this.[14]  As a result, the disease can spread before individuals know that they are affected, facilitating the rapid contagion.

39.     On March 12, 2020, Governor Tony Evers declared a public health emergency to direct all resources needed to respond to and contain COVID-19 in Wisconsin.

---

[11] *People who are at higher risk for severe illness*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html       (last updated Mar. 22, 2020).
[12] *Id.*
[13] *Coronavirus 2019 (COVID-19): How to Prepare*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html  (last updated Mar. 4, 2020).
[14] Mary Van Beusekom, *Studies profile lung changes in asymptomatic COVID-19, viral loads in patient samples*, CTR. FOR INFECTIONS DISEASE RES. & POL'Y, UNIV. OF MINN. (Feb. 25, 2020), http://www.cidrap.umn.edu/news-perspective/2020/02/studies-profile-lung-changes-asymptomatic-covid-19-viral-loads-patient.

40.     On March 13, 2020, President Donald Trump proclaimed a National Emergency concerning COVID-19.

41.     On March 24, 2020, Governor Evers issued Emergency Order #12, the "Safer at Home" Order, which, starting March 25th, has closed all nonessential businesses in Wisconsin and requires the state's residents, with limited exceptions, to stay at home in order to reduce the transmission of COVID-19.[15]   The order begins by stating that, "[T]he entire State of Wisconsin - including residents, businesses, community organizations, and government - need to take all possible actions to reduce further spread of COVID-19 to save lives."[16]   The order continues: "[S]ocial distancing - the practice of keeping at least six feet apart from others and avoiding direct physical contact - is the only effective means of slowing the rate of infection. Despite prior emergency orders banning mass gatherings, the rates of infection continue to drastically increase, necessitating additional measures to slow the rate of infection and save lives."[17]

42.     Emergency Order #12 mandates that "[a]ll individuals present within the State of Wisconsin are ordered to stay at home or at their place of residence, with exceptions" for certain defined "essential activities" such as those to promote individual and family health and safety including obtaining groceries and medications, "essential governmental functions," "essential businesses and operations" such as grocery stores, pharmacies and gas stations, "non-essential minimum basic operations," and "essential travel."[18]   Furthermore, the Order instructs that "[t]o the extent individuals are using shared or outdoor spaces other than their home or residence, they must at all times as reasonably possible maintain social distancing of at least six (6) feet from any

---

[15] *See supra* note 1, Emergency Order #12,
[16] *Id*. at 1.
[17] *Id*. at 2.
[18] *Id*. at 2.

other person consistent with Social Distancing Requirements," as defined.[19]  The Order mandates

that "[n]on-essential business and operations must cease. All for-profit and non-profit businesses

with a facility in Wisconsin, except Essential Businesses and Operations as defined below, are

required to cease all activities at facilities located within Wisconsin."[20]

43.    Crucially, for purposes of this litigation, the Order commands that, "All public and

private gatherings of any number of people that are not part of a single household or living unit

are prohibited, except for the limited purposes expressly permitted in this Order."[21]  It also requires

that, "Elderly people and those who are vulnerable as a result of underlying health conditions

should take additional precautions. People at high risk of severe illness from COVID-19 and

people who are sick are urged to stay in their home or residence to the extent possible except as

necessary to seek medical care."[22]

44.    The pandemic shows no sign of abating before the April 7, 2020 statewide

elections, and the emergency order issued by Governor Evers' administration took effect March

25, 2020 at 8:00 a.m. and will remain in effect until April 24, 2020 at 8:00 a.m.  More importantly,

countless eligible Wisconsin voters will continue to self-quarantine for fear of contracting COVID-

19, and/or for fear of transmitting the disease, regardless of whether they are symptomatic or not.

45.    Many Wisconsin voters are abandoning plans to vote in person for the April 7, 2020

statewide elections and are requesting absentee mail-in ballots in unprecedented numbers.  626,837

absentee, mail-in ballots have been requested, and 595,195 have been sent, as of the morning of

March 25, 2020.[23]

---

[19] *Id*. at 2.
[20] *Id*. at 3.
[21] *Id*. at 3.
[22] *Id*. at 4.
[23] Absentee Ballot Report, *supra* note 6.

46.     Registered voters in Wisconsin can apply for and obtain absentee ballots in a variety of ways: by mail-in application; in person at the municipal clerk's office or at an alternate site under Wis. Stat. § 6.855; by signing a statement and filing a request to receive absentee ballots under Wis. Stat. § 6.86(2) or Wis. Stat. § 6.86(2m)(a) (indefinitely confined voters) or Wis. Stat. §§ 6.22(4), 6.24(4), or 6.25(1)(c) (military and overseas voters); by agent as provided in Wis. Stat. § 6.86(3) (hospitalized voters); by delivering an application to a special voting deputy under Wis. Stat. § 6.875(6) (voters in retirement homes and residential care facilities); by email or fax as provided in Wis. Stat. § 6.86(1)(ac); and by online request via myvote.wi.gov.

47.     Absentee ballots are cast and returned in different ways as well.  Many absentee voters mail their absentee ballots to the municipal clerk's office, drop the ballots off or authorize someone to drop them off on their behalf.  Wis. Stat. § 6.87.[24]  In-person absentee voters vote prior to Election Day at designated sites, but their ballots are not processed and counted until Election Day.  Wis. Stat. §§ 6.855, 6.87, 6.88.  All absentee ballots must be returned to the municipal clerk's office by no later than 8:00 p.m. on Election Day.  Wis. Stat. § 6.87(6).

48.     All absentee ballots must be witnessed and signed by an adult U.S. citizen, (other than those cast by military and overseas voters, whose absentee ballots may be witnessed by an adult who is not a U.S. citizen), but that individual need not be a resident of Wisconsin or a registered voter in the state.  Wis. Stat. § 6.87(4)(b)1.[25]  The witness signature requirement applies

---

[24] *See also Uniform Instructions for Wisconsin Absentee Voters*, WIS. ELECTIONS COMM'N, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/2019-02/Uniform%20Instructions%20for%20Absentee%20Voting%20-%20All%20Voters%20%20%28Rev.%202-2019%29.pdf (last visited Mar. 25, 2020).

[25] *See also Form EL-122, Standard Absentee Ballot Certificate*, WIS. ELECTIONS COMM'N, *available at* https://elections.wi.gov/sites/elections.wi.gov/files/gab_forms/4/el_122_standard_absentee_ballot_certificate_portra_17554.pdf (last visited Mar. 25, 2020).

to all absentee voters, regardless of the particular method by which the voter cast that absentee ballot. *Id*. The absentee ballot certificate contains both a voter certification and a witness certification, which the voter and witness must respectively sign under penalty of perjury.[26]

49. For in-person absentee voting, the municipal clerks serve as the witnesses, and they must put down the clerk's office address but, upon information and belief, they can just use a stamp.[27] Other forms of absentee voting, such as for hospitalized voters and voters in nursing homes, through an agent or special voting deputy ("SVD") require the agent or SVD to serve as the witness.

50. Because Wisconsin law requires that mail-in absentee ballots' certifications be signed by the voter and by a witness who is an adult U.S. citizen,[28] this requirement constitutes an insurmountable hurdle for many eligible Wisconsin voters under self-quarantine. All eligible Wisconsin voters under self-quarantine who live alone or who do not have an adult U.S. citizen in their household will be unable to satisfy the state's witness signature requirement and cast a mail-in absentee ballot.

51. According to the U.S. Census Bureau, there are over 675,000 single-member households in Wisconsin, and many other households that include only one adult.[29] More than 250,000 of these single-member households are individuals over the age of 65.[30]

52. Since in-person voting would pose a severe risk to the bodily integrity and lives of eligible Wisconsin voters who are under quarantine, that option is not viable either. Indeed, in-

---

[26] *Id*.
[27] *See Absentee Voting 101*, WIS. ELECTIONS COMM'N (Sept. 7, 2016), https://elections.wi.gov/node/4086 (last visited Mar. 25, 2020).
[28] As noted previously, for military and overseas voters, the witness need not be a U.S. citizen.
[29] *See* U.S. Census Bureau, *supra* note 7.
[30] *Id*.

person voting, which requires the gathering of many poll workers (or "election inspectors") and voters in a single polling place, would seem to violate Emergency Order #12's clear directives. Under the current circumstances, given the acknowledged public health hazard of contracting COVID-19 from in-person voting and Emergency Order #12's directives to remain at home, the witness signature requirement preventing certain eligible Wisconsin voters from casting a mail-in ballot constitutes an undue burden on the right to vote not justified by any legitimate or important government interest.

53.     Plaintiffs Sylvia Gear, Dr. Malekeh Hakami, Patricia Ginter, and Claire Whelan are all eligible, registered Wisconsin voters who must vote by mail-in absentee ballot to safeguard their lives during this pandemic.  Because they all live alone and are all self-quarantining during the COVID-19 pandemic, given their advanced age and medical histories, the CDC's recommendations, and now Governor Evers's Emergency Order #12, Plaintiffs have no way to safely obtain a witness signature on their mail-in absentee ballots certifications and are therefore effectively disenfranchised by Wis. Stat. § 6.87(4)(b)1.  Absent a court order enjoining the witness signature requirement for the duration of the COVID-19 pandemic, and certainly no less than the duration of Governor Evers's Emergency Order #12 (currently in effect through April 24, 2020, subject to any further extension), they will be denied their right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution.

54.     Disenfranchising mail-in absentee voters because they are self-quarantining and cannot obtain a witness signature on their ballot certification envelope cannot be justified by any legitimate, important regulatory interest of Wisconsin state government officials, including Defendants.  As is clear from Emergency Order #12, Wisconsin state government officials have a very strong public health interest in limiting in-person voting and incentivizing participation by

mail-in absentee ballot.  If the latter option is closed off to individuals who live alone or do not

have an adult U.S. citizen in their household, they may well resort to in-person voting, thereby

running the risk of contracting and spreading COVID-19 and further worsening the pandemic in

Wisconsin.  Others, like Plaintiffs, will be prevented from voting altogether, an unconstitutional

result that this suit seeks to prevent.

## CLAIMS

### COUNT ONE
### (All Plaintiffs)
### (Undue Burden on the Right to Vote in Violation of the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983)

55.     The factual allegations contained in paragraphs 1 through 54 are incorporated into

Count One, as though fully set forth herein.

56.     Under the First and Fourteenth Amendments to the U.S. Constitution, any burden

on the right to vote must be balanced against a state's interest in that requirement.  The Supreme

Court has set forth the following test:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *see also id*., at 788–789, n. 9, 103 S.Ct., at 1569–1570, n. 9.

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also One Wisconsin Institute, Inc. v. Thomsen*,

15-cv-324-jdp, 2016 WL 4059222 at *3 (W.D. Wis. July 29, 2016) ("This analysis proceeds under

what is known as the *Anderson–Burdick* framework, which sets out a three-step analysis. First, I

determine the extent of the burden imposed by the challenged provision. Second, I evaluate the

interest that the state offers to justify that burden. Third, I judge whether the interest justifies the burden.").

57.     The witness signature requirement for absentee mail-in ballots requires mail-in absentee voters to obtain an adult U.S. citizen's signature certifying that the voter cast the mail-in ballot themselves.  Wis. Stat. § 6.87(4)(b)1.

58.     Under the circumstances of the COVID-19 pandemic, which has led both the federal and Wisconsin state government to declare emergencies and has led Governor Evers to issue Emergency Order #12, ordering Wisconsin residents to stay at home (with limited exceptions) and banning "[a]ll public and private gatherings of any number of people that are not part of a single household or living unit," it is not safe, reasonable, or even logical to require mail-in absentee voters who live alone or do not have an adult U.S. citizen living in their household to seek out and obtain a witness's signature in order for the ballot to be validly cast and counted.

59.     Not only does continuing to require a witness signature on a mail-in ballot in the face of this fast-spreading pandemic lack support from a legitimate government interest that is "compelling" or "important," *Burdick*, 504 U.S. at 434, but it would directly contradict the state's proffered interest in maintaining strict separation of people who are not family members, as manifest on every page of Governor Evers' Emergency Order #12.

60.     Given the circumstances of the COVID-19 pandemic, eligible Wisconsin voters who live alone or who do not have an adult U.S. citizen living in their household simply cannot comply with the requirements of Wis. Stat. § 6.87(4)(b)1. and still cast a mail-in absentee ballot that will count.  Therefore, under these circumstances, Section 6.87(4)(b)1. now creates an undue burden on mail-in absentee voters' right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution as construed by *Anderson* and *Burdick*.

61.     In-person voting of course is not a reasonable alternative, as that would require these eligible Wisconsin voters to enter a confined space with even more people than would be required to witness the casting of a mail-in absentee ballot and seriously jeopardize their health and life.

62.     Defendants, acting under color of state law, have deprived and will continue to deprive Plaintiffs of their rights under the First and Fourteenth Amendments to the U.S. Constitution.

63.     For the foregoing reasons, Defendants have deprived and will continue to deprive Plaintiffs of the right to be free of undue burdens on their right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution as enforced by 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

(a) Assume jurisdiction over this matter;

(b) Declare that Wis. Stat. § 6.87(4)(b)1. violates the First and Fourteenth Amendments to the U.S. Constitution, as enforced through 42 U.S.C. § 1983;

(c) Issue a temporary restraining order and a preliminary injunction enjoining Defendants from enforcing Wis. Stat. § 6.87(4)(b)1. and from rejecting and/or refusing to process and count absentee mail-in ballots that lack a witness signature for at least such time as Emergency Order #12 remains in place, subject to further extension;[31]

---

[31] Because Defendants cannot feasibly ascertain and police which of Wisconsin's three million-plus registered voters live alone and/or have adult U.S. citizen living in the same household, Plaintiffs seek an injunction blocking this law on its face for at least such time as Emergency Order #12 remains in place, subject to further extension.

(d)  Issue  a  permanent  injunction  enjoining  Defendants  from  enforcing  Wis.  Stat.  § right

6.87(4)(b)1. and from rejecting and/or refusing to process and count absentee mail-in ballots that

lack a witness signature for at least such time as Emergency Order #12 remains in place, subject

to further extension;

(e) Retain jurisdiction to monitor Defendants' compliance with this Court's judgment;

(f) Grant Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this action

pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

(g) Grant such other relief as this Court deems just and proper.

DATE: March 26, 2020

Respectfully submitted,

/s/ Jon Sherman

Jon Sherman*
D.C. Bar No. 998271
Michelle Kanter Cohen*
D.C. Bar No. 989164
Cecilia Aguilera*
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
(202) 331-0114

Douglas M. Poland
State Bar No. 1055189
David P. Hollander
State Bar No. 1107233
RATHJE WOODWARD LLC
10 E Doty Street, Suite 507
Madison, WI 53703
Phone:  608-960-7430
Fax:  608-960-7460
dpoland@rathjewoodward.com
dhollander@rathjewoodward.com

*Counsel for Plaintiffs*

*Admitted to the U.S. District Court for the
Western District of Wisconsin*